# EXHIBIT A

**SUMMONS**

Attorney(s) Thaddeus P. Mikulski, Jr., Esq.

Office Address 365 White Horse Avenue

Town, State, Zip Code Hamilton, NJ 08619

Telephone Number (609) 581-0470

Attorney(s) for Plaintiff Joseph N. Seibert and

Erik Van Dillen

Plaintiff(s)

Vs.

Hyman Enterprises, LLC and Mark Hyman, M.D.

Defendant(s)

**Superior Court of
New Jersey**

MERCER COUNTY

Law DIVISION

Docket No: L-1967-14

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

*Michelle M. Smith*

Clerk of the Superior Court

DATED: 9/12/14

Name of Defendant to Be Served: Mark Hyman, M.D.

Address of Defendant to Be Served: 55 Pittsfield Road, Lenox, MA

Revised 09/04/2012, CN 10792-English (Appendix XII-A)

**Thaddeus P. Mikulski, Jr. (7141983)**
365 White Horse Avenue
Hamilton, New Jersey 08610
(609) 581-0470

Attorney for Plaintiffs, Joseph N. Seibert
and Erik Van Dillen

| | |
|---|---|
| Joseph N. Seibert and Erik Van Dillen, | Superior Court of New Jersey Mercer County - Law Division |
| Plaintiffs, | Civil Action |
| vs. | Docket No: L-1967-14 |
| Hyman Enterprises LLC, and Mark Hyman, M.D., | Complaint and Jury Demand |
| Defendants. | |

Plaintiffs, Joseph N. Seibert ("Seibert") and Erik Van Dillen ("Van Dillen"), by way of Complaint against Defendants, Hyman Enterprises LLC and Mark Hyman, M.D., ("Hyman") state:

1. Plaintiff Seibert resides in Rutherford, New Jersey and Plaintiff Van Dillen resides in West Windsor, New Jersey.

2. Defendant, Hyman Enterprises, LLC, is a Massachusetts limited liability company with a principal place of business located at 55 Pittsfield Road, Suite 9, Lenox, Massachusetts. Mark Hyman, M.D. is the owner and President of Hyman Enterprises, LLC.

3. In May, 2013, Hyman approached Seibert seeking assistance in fixing unfavorable business deals Hyman and his company had entered into.  Seibert then introduced Hyman to Van Dillen.

4. At Hyman's request, Seibert met with Hyman on May 13, 2013, where Hyman asked Seibert to provide management and operational assistance for his business pursuits and those of Hyman Enterprises, LLC.

5. Between May 13 and June 20, 2013, Plaintiffs worked with Hyman reviewing detailed business documents that were provided to them by Hyman and developed an initial strategy to rescue Hyman's business.  In an email to Seibert on May 29th, Hyman stated "Thanks for calling me today – love your plan."

6.   As evidence of Hyman's approval of and reliance on Plaintiffs' consulting work, Hyman asked Seibert and Van Dillen to participate in a meeting with a potential investor, Michael Lerner, on June 20, 2013 at the Four Seasons Hotel in New York.  At Hyman's request, Seibert presented the strategic vision of the company to Michael Lerner to induce him to invest in Hyman Enterprises, LLC.  Lerner committed to invest in Hyman Enterprises, LLC because of the Plaintiffs' experience, insight and presentation.

7. The following day, June 21st, Hyman invited Seibert and Van Dillen to his home on July 11th in the Berkshires to participate in Hyman's annual planning meeting for Hyman Enterprises, LLC.   During the next week, Hyman continued to solicit consultation from Seibert and Van Dillen and shared with them   detailed   financial   statements,   marketing   plans   and   technology

assessments from various vendors that had been created for, and later abandoned, by Hyman.

8.  Plaintiffs and Defendants agreed that Plaintiffs would be compensated for their services at a total rate of $25,000 per month, with the agreement that Van Dillen would work two and one-half days per week and Seibert would work one day per week.  Because Hyman expressed concern about his immediate cash flow, Seibert and Van Dillen agreed to delay payment for their services on a short term basis.

9.  During the strategy meeting at Mark Hyman's residence on July 11, 2013, Hyman asked Seibert to serve as Chief Executive Officer and Van Dillen to serve as Chief Operating Officer of Hyman Enterprises, LLC.

10.  During the remainder of July, Seibert and Van Dillen worked several hundred hours with Hyman and his staff on developing a strategic framework for operating his business and managing multiple vendor relationships, including many which had soured due to Defendant's failure to pay the vendor's invoices.  By the end of the July 2013, the Plaintiffs were fully engaged in working for Hyman and his company, having conducted 1-on-1 interviews with every member of the staff at Hyman Enterprises LLC, leading weekly meetings on behalf of the Defendant and initiating several critical projects for Hyman Enterprises LLC.  By the end of July, Hyman's chief of staff had relinquished responsibility for staff management to Van Dillen and Seibert.

11.  From the beginning of their working relationship, Hyman turned over significant responsibility for Hyman Enterprises, LLC to Plaintiffs.  After

sharing the financials, deals and contracts for Hyman Enterprises, LLC, Hyman requested that Seibert and Van Dillen renegotiate terms with several vendors that Hyman had contracted and who had not been paid for their services. Seibert and Van Dillen continued these negotiations as part of their services to Hyman for several months. For example, Van Dillen and Seibert made multiple calls over the Thanksgiving weekend to prevent one vendor from shutting down Defendant's website in response to more than $30,000 in outstanding payables.

12. Hyman asked that Plaintiffs take over the general management of Hyman Enterprises operations, including strategic planning, entering into new business deals, managing the business's marketing efforts and preparing materials for and managing the launch of Hyman's upcoming books.

13. After several meetings with staff members, Plaintiffs became aware of the utter disarray and absence of effective leadership at Hyman Enterprises. Seibert and Van Dillen spent substantially more time working for Defendant than they had originally planned. Seibert spent two (2) to three (3) days per week, and Van Dillen spent four (4) to five (5) days per week. Even on the days they were not exclusively working on matters for Hyman Enterprises, Plaintiffs participated in conference calls and video conferences, responded to emails and were generally available to manage operations. Van Dillen met with Hyman's staff everyday. Seibert ran several meetings a week with Hyman's staff. In addition to directing virtually every project Hyman's staff worked on, Seibert and Van Dillen also represented Hyman in meetings with his book publisher to

coordinate his book launch. Without exception, Hyman took Seibert and Van Dillen's business advice and followed their strategy.

14. Because of their increased roles and responsibilities, in July 2013 Defendants agreed to compensate Plaintiffs at the rate of $35,000 per month.

15. Between May and December 2013, Plaintiffs provided extensive work on the following matters for Hyman Enterprises:

- The preparation, strategic analysis, and production of materials pertaining to the launch of the book *10-Day Detox*

- The launch and production of a weekly video newsletter, including work on its design, copyediting, coordination, film editing, graphics, technology and content.

- The implementation of strategies, designs and execution of a recipe testing program.

- The creation, management and publication of operational reporting procedures.

- The implementation of creative and functional strategies for the re-launch of a cookbook.

- The oversight of functionality, creative technology and copy for the launch of the book, *The Daniel Plan*.

- The production, coordination, writing, planning and management of the PBS Pledge Package.

- The management of Hyman's primary web design firm.

- Management of human resource issues among staff.

- The coordination and management of Video Testimonials.

Additionally, Plaintiffs oversaw vendor selection for branding & creative design work, ran operational and strategy meetings, held weekly 1-on-1 meetings with team members, and managed vendors, including negotiating pricing on behalf of Hyman Enterprises.

16.   For the entirety of their working relationship with Hyman and Hyman Enterprises, LLC.   Seibert and Van Dillen worked tirelessly, often around the clock to meet deadlines for Hyman's business commitments.   In addition to turning down other consulting work during this time, Seibert and Van Dillen each spent significant out of pocket money with the expectation, as discussed repeatedly with Hyman, that they would be made whole.   Seibert spent at least $100,000 on photography and video equipment that was used for the production of nearly a dozen video newsletters to support Hyman's social media following, customer testimonials to support the 10-Day Detox Book Launch, and hours of footage in support of Hyman's digital video product. Additionally, Seibert spent $25,000 on a van to transport equipment, and travel expenses to and from Hyman's home in Massachusetts.   Van Dillen traveled to New York, Washington, D.C., and Massachusetts on behalf of Hyman Enterprises.

17.   At every step along the way, Hyman communicated his appreciation for Plaintiffs' efforts and work product, constantly stating directly to Plaintiffs, "we have to get you guys paid," and to others, "We have to get these guys paid." Despite Hyman's assertions, he never made any effort to compensate Plaintiffs.

Plaintiffs started to become concerned about the veracity of Hyman's promises on account of Hyman's conduct.

18.     From August through October 2013, Defendant repeatedly asked Seibert to take illegal drugs – marijuana and ecstasy.  Every time Seibert refused, Hyman apologized and said he forgot Seibert didn't use drugs, only to ask Seibert to engage in illegal drug use again and again.  The last time Hyman asked Seibert to engage in this behavior was on October 11, 2013, at a company party called "Octoberfest" where everyone in attendance was encouraged to participate in illegal drug use.  On the two occasions that Seibert went to parties for Hyman Enterprises, he found all in attendance, including Hyman, engaging in illegal drug use.

19.  At the end of October 2013, Hyman expressed great concern about the company's financial state.  Seibert met with the Chief Financial Officer, Gerry Doherty, to review the company's finances in more detail.  The CFO informed Seibert that Hyman Enterprises had a negative cash flow because Hyman had withdrawn almost $2.9 million in cash from the company that same fiscal year for Hyman's own personal use.  The CFO explained to Seibert that Hyman was in the middle of his third divorce and as a result was responsible for significant alimony payments.

20.  Hyman also started excluding Plaintiffs from certain business decisions and discussions because of their religion, stating to Seibert that he was inferior for not sharing the same religious affiliation with Hyman, namely Jewish.

21.   In November, Seibert approached Hyman and said that he and Van Dillen could not continue to work for Hyman without being paid because Hyman was taking millions of dollars out of the company for his own personal use.  Hyman's response was, "We'll get you paid, I know, I know."

22.   In November, Defendant left a voicemail on Seibert's phone telling Seibert how much he "loved" working with Seibert and valued what Seibert did for him, that he had improved past year significantly.

23.   On December 3rd, while in a taxi en-route to a meeting with the Defendant's book publisher, Defendant said to Van Dillen "So, we really have to get you paid."   Five days later and without any explanation, Hyman fired Seibert and Van Dillen.

24.   After Plaintiffs were terminated, Hyman had a successful book launch based on Plaintiffs' efforts and went on to become a New York Times Bestselling author of *The 10-Day Detox*.  Defendant continued to benefit from marketing and operational support provided earlier from Seibert and Van Dillen of *The Daniel Plan*, a book Hyman co-authored with a national celebrity. Hyman also continued to use video materials, web designs and technology Plaintiffs had helped build and invested personal money in producing to promote and grow his audience, and continued to benefit from vendor relationships Plaintiffs had created, developed or improved.

25.  Despite repeated promises by Defendant to compensate Plaintiffs for their services and acknowledgements by Defendant that Plaintiffs must be

paid, Defendant made no payments to Plaintiffs for their services, the majority of which were performed by Plaintiffs in the State of New Jersey.

## COUNT I
## BREACH OF CONTRACT

26.   Plaintiffs repeat the allegations of Paragraphs 1 through 25, as if fully set forth.

27.   The Plaintiffs and Defendants entered into a contract whereby Plaintiffs agreed to provide services to Defendant in exchange for remuneration.

28.   Defendants breached the contract by their failure to pay Plaintiffs for their services and by its actions violated the covenant of good faith and fair dealing implicit in the contract between the parties.

29.   As a result of Defendants' breach of the contract, Plaintiffs have sustained damages.

WHEREFORE, Plaintiffs, Joseph N. Seibert and Erik Van Dillen, demand judgment against Defendants,  Mark Hyman, M.D. and Hyman Enterprises, LLC, for damages, costs of suit and interest.

## COUNT II
## FRAUD IN THE INDUCEMENT

30.   Plaintiffs repeat the allegations of Paragraphs 1 through 29, as if fully set forth.

31.   Defendant, Mark Hyman, M.D., induced Plaintiffs to provide services to himself and his company Hyman Enterprises, LLC based upon his promises that he would compensate Plaintiffs for their services.

32.   Defendant never had any intention of compensating Plaintiffs for

their services when he made his initial promises that Plaintiffs would be compensated for their services. After Plaintiffs began performing services for Defendants, Mark Hyman, M.D made additional representations to Plaintiffs that they would be paid for their services in order to induce them to continue to provide services to Mark Hyman, M.D. and his company.  Defendant never had any intention of compensating Plaintiffs for their services when he made these additional promises. Upon information and belief, Defendant has made promises to other individuals to induce them to provide services for Hyman Enterprises and then failed to pay those individuals for work performed.

33.  Defendant's representations that he would compensate Plaintiffs for their services were false. Defendant knew they were false at the time he made them and knew that Plaintiffs would rely on his representations.

34.   Plaintiffs' reasonably relied upon Defendant's material representations to their economic detriment.

35.   As a result of Plaintiffs' reliance on the misrepresentations of Defendant, Plaintiffs have suffered damages and economic loss.

36.  Defendants intentional actions were malicious and justify an award of punitive damages.

**WHEREFORE,** Plaintiffs, Joseph N. Seibert and Erik Van Dillen demand judgment against Defendant, Mark Hyman, M.D. and Hyman Enterprises, LLC for compensatory and punitive damages together with costs, interest, and such other relief the Court may deem appropriate.

## COUNT III
## QUANTUM MERUIT

37.  Plaintiff repeats the allegations of Paragraphs 1 through 36.

38.  Plaintiffs provided valuable labor, material and services to Defendants.

39.  Defendants benefited from the labor, material and services Plaintiffs provided to them.

40.  Defendants failed to pay Plaintiffs for the value of the labor, material and services provided to them.

41.  Plaintiff suffered economic loss as a result of the failure of the defendants to pay for Plaintiffs' labor, services and materials for which Defendants knew that plaintiffs expected to receive compensation.

**WHEREFORE**, Plaintiffs, Joseph N. Seibert and Erik Van Dillen demand judgment against Defendants, Mark Hyman, M.D. and Hyman Enterprises, LLC for compensatory damages together with costs, interest, and such other relief the Court may deem appropriate.

## COUNT IV

## LAW AGAINST DISCRIMINATION

42.  Plaintiff repeats the allegations of Paragraphs 1 through 41.

43.  Defendants decided to terminate their relationship with Plaintiffs, because Plaintiffs were not of the Jewish faith. Defendants decided to terminate their relationship with Plaintiff on account of the actual or perceived religious affiliation of the Plaintiffs.

44.  Defendant's actions constituted a violation of the New Jersey Law

–11–

Against Discrimination, as a direct and proximate result of which the Plaintiffs have suffered economic injury, humiliation, anguish, embarrassment, emotional and mental distress and other damages.

45.   The willful and deliberate discriminatory acts of Defendants, Mark Hyman, M.D. and Hyman Enterprises, LLC, were outrageous and beyond all bounds of decency, justifying the imposition of punitive damages.

46.   The conduct of Defendants warrants an award of punitive damages as the willful participation of the Mark Hyman, individually and as owner and president of Hyman Enterprises, LLC, justifies the imposition of punitive damages for the Defendants' reckless indifference to the rights of Plaintiffs, Joseph N. Seibert and Erik Van Dillen.

WHEREFORE, Plaintiffs, Joseph N. Seibert and Erik Van Dillen, demands judgment against Defendants, Mark Hyman, M.D., and Hyman Enterprises, LLC for compensatory damages, including damages for emotional distress, personal injury, back pay, front pay, consequential damages, punitive damages, pre-judgment interest, enhancements for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## CERTIFICATION

I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that I am not aware of any other person who should be joined in this matter.

Dated: 8/22/14

Thaddeus P. Mikulski, Jr.

**Appendix XII-B1**



| | |
|---|---|
| **CIVIL CASE INFORMATION STATEMENT**<br>**(CIS)**<br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**<br>**if information above the black bar is not completed**<br>**or attorney's signature is not affixed** | FOR USE BY CLERK'S OFFICE ONLY<br>PAYMENT TYPE: ☐ CK ☐ CG ☐ CA<br>CHG/CK NO.<br>RECEIVED AND FILED<br>AMOUNT:<br><br>OVERPAYMENT:  AUG 29 2014<br><br>BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Thaddeus P. Mikulski, Jr. | TELEPHONE NUMBER<br>(609) 581-0470 | COUNTY OF VENUE<br>Mercer |
|---|---|---|
| FIRM NAME (if applicable) | | DOCKET NUMBER (when available)<br>L-1967-14 |
| OFFICE ADDRESS<br>365 White Horse Avenue<br>Hamilton, NJ  08610 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND   ☒ Yes   ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Joseph N. Seibert and Erik Van Dillen | CAPTION<br>Joseph N. Seibert and Erik Van Dillen vs. Mark Hyman, M.D., t/a Hyman Enterprises |
|---|---|
| CASE TYPE NUMBER<br>(See reverse side for listing)<br>509 | HURRICANE SANDY RELATED?<br>☐ YES   ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ Yes   ☒ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes   ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☒ Yes   ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☒ EMPLOYER/EMPLOYEE<br>☐ FAMILIAL | ☐ FRIEND/NEIGHBOR<br>☐ BUSINESS | ☐ OTHER (explain) |
|---|---|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☒ Yes   ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes   ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ Yes   ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:  *Thaddeus P Mikulski*

MERCER COUNTY COURTHOUSE
CIVIL CASE MANAGEMENT OFFICE
175 SOUTH BROAD ST P O BOX 8068
TRENTON            NJ 08650-0068

COURT TELEPHONE NO. (609) 571-4490
COURT HOURS  8:30 AM - 4:30 PM

TRACK ASSIGNMENT NOTICE

DATE:    SEPTEMBER 08, 2014
RE:      SEIBERT ET AL V HYMAN ENTERPRISES LLC ET AL
DOCKET:  MER L -001967 14

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

DISCOVERY IS    300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON ANTHONY M. MASSI

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     012
AT:
(609) 571-4475.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

ATTENTION:
ATT: THADDEUS MIKULSKI JR
THADDEUS MIKULSKI JR
LAW OFFICE OF THADDEUS P MIKULSKI JR
365 WHITE HORSE AVE
HAMILTON          NJ 08610-1423

JUMXORI

## SUMMONS

Attorney(s) _Thaddeus P. Mikulski, Jr., Esq._

Office Address _365 White Horse Avenue_

Town, State, Zip Code _Hamilton, NJ 08619_

_____

Telephone Number _(609) 581-0470_

Attorney(s) for Plaintiff _Joseph N. Seibert and_

_Erik Van Dillen_

_____

    Plaintiff(s)

Vs.

_Hyman Enterprises, LLC and Mark Hyman, M.D._

_____

    Defendant(s)

### Superior Court of New Jersey

    _MERCER_    COUNTY

    _Law_    DIVISION

Docket No: _L-1967-14_

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

                                            _Michelle M. Smith_

                                          Clerk of the Superior Court

DATED: _9/12/14_

Name of Defendant to Be Served: _Hyman Enterprises, LLC_

Address of Defendant to Be Served: _55 Pittsfield Road, Lenox, MA_

Revised 09/04/2012, CN 10792-English (Appendix XII-A)

**Thaddeus P. Mikulski, Jr. (7141983)**
365 White Horse Avenue
Hamilton, New Jersey 08610
(609) 581-0470

Attorney for Plaintiffs, Joseph N. Seibert
and Erik Van Dillen

| | |
|---|---|
| Joseph N. Seibert and Erik Van Dillen, | Superior Court of New Jersey Mercer County - Law Division |
| | Civil Action |
| Plaintiffs, | |
| vs. | Docket No: L-1967-14 |
| Hyman Enterprises LLC, and Mark Hyman, M.D., | Complaint and Jury Demand |
| Defendants. | |

Plaintiffs, Joseph N. Seibert ("Seibert") and Erik Van Dillen ("Van Dillen"), by way of Complaint against Defendants, Hyman Enterprises LLC and Mark Hyman, M.D., ("Hyman") state:

1. Plaintiff Seibert resides in Rutherford, New Jersey and Plaintiff Van Dillen resides in West Windsor, New Jersey.

2. Defendant, Hyman Enterprises, LLC, is a Massachusetts limited liability company with a principal place of business located at 55 Pittsfield Road, Suite 9, Lenox, Massachusetts. Mark Hyman, M.D. is the owner and President of Hyman Enterprises, LLC.

3.  In May, 2013, Hyman approached Seibert seeking assistance in fixing unfavorable business deals Hyman and his company had entered into.  Seibert then introduced Hyman to Van Dillen.

4.  At Hyman's request, Seibert met with Hyman on May 13, 2013, where Hyman asked Seibert to provide management and operational assistance for his business pursuits and those of Hyman Enterprises, LLC.

5.  Between May 13 and June 20, 2013, Plaintiffs worked with Hyman reviewing detailed business documents that were provided to them by Hyman and developed an initial strategy to rescue Hyman's business.  In an email to Seibert on May 29th, Hyman stated "Thanks for calling me today – love your plan."

6.  As evidence of Hyman's approval of and reliance on Plaintiffs' consulting work, Hyman asked Seibert and Van Dillen to participate in a meeting with a potential investor, Michael Lerner, on June 20, 2013 at the Four Seasons Hotel in New York.  At Hyman's request, Seibert presented the strategic vision of the company to Michael Lerner to induce him to invest in Hyman Enterprises, LLC.  Lerner committed to invest in Hyman Enterprises, LLC because of the Plaintiffs' experience, insight and presentation.

7.  The following day, June 21st, Hyman invited Seibert and Van Dillen to his home on July 11th in the Berkshires to participate in Hyman's annual planning meeting for Hyman Enterprises, LLC.   During the next week, Hyman continued to solicit consultation from Seibert and Van Dillen and shared with them detailed financial statements, marketing plans and technology

assessments from various vendors that had been created for, and later abandoned, by Hyman.

8. Plaintiffs and Defendants agreed that Plaintiffs would be compensated for their services at a total rate of $25,000 per month, with the agreement that Van Dillen would work two and one-half days per week and Seibert would work one day per week.  Because Hyman expressed concern about his immediate cash flow, Seibert and Van Dillen agreed to delay payment for their services on a short term basis.

9. During the strategy meeting at Mark Hyman's residence on July 11, 2013, Hyman asked Seibert to serve as Chief Executive Officer and Van Dillen to serve as Chief Operating Officer of Hyman Enterprises, LLC.

10. During the remainder of July, Seibert and Van Dillen worked several hundred hours with Hyman and his staff on developing a strategic framework for operating his business and managing multiple vendor relationships, including many which had soured due to Defendant's failure to pay the vendor's invoices.  By the end of the July 2013, the Plaintiffs were fully engaged in working for Hyman and his company, having conducted 1-on-1 interviews with every member of the staff at Hyman Enterprises LLC, leading weekly meetings on behalf of the Defendant and initiating several critical projects for Hyman Enterprises LLC.  By the end of July, Hyman's chief of staff had relinquished responsibility for staff management to Van Dillen and Seibert.

11. From the beginning of their working relationship, Hyman turned over significant responsibility for Hyman Enterprises, LLC to Plaintiffs.  After

sharing the financials, deals and contracts for Hyman Enterprises, LLC, Hyman requested that Seibert and Van Dillen renegotiate terms with several vendors that Hyman had contracted and who had not been paid for their services.  Seibert and Van Dillen continued these negotiations as part of their services to Hyman for several months.  For example, Van Dillen and Seibert made multiple calls over the Thanksgiving weekend to prevent one vendor from shutting down Defendant's website in response to more than $30,000 in outstanding payables.

12.   Hyman asked that Plaintiffs take over the general management of Hyman Enterprises operations, including strategic planning, entering into new business deals, managing the business's marketing efforts and preparing materials for and managing the launch of Hyman's upcoming books.

13.   After several meetings with staff members, Plaintiffs became aware of the utter disarray and absence of effective leadership at Hyman Enterprises. Seibert and Van Dillen spent substantially more time working for Defendant than they had originally planned.  Seibert spent two (2) to three (3) days per week, and Van Dillen spent four (4) to five (5) days per week.  Even on the days they were not exclusively working on matters for Hyman Enterprises, Plaintiffs participated in conference calls and video conferences, responded to emails and were generally available to manage operations. Van Dillen met with Hyman's staff everyday.   Seibert ran several meetings a week with Hyman's staff.   In addition to directing virtually every project Hyman's staff worked on, Seibert and Van Dillen also represented Hyman in meetings with his book publisher to

coordinate his book launch. Without exception, Hyman took Seibert and Van Dillen's business advice and followed their strategy.

14. Because of their increased roles and responsibilities, in July 2013 Defendants agreed to compensate Plaintiffs at the rate of $35,000 per month.

15. Between May and December 2013, Plaintiffs provided extensive work on the following matters for Hyman Enterprises:

- The preparation, strategic analysis, and production of materials pertaining to the launch of the book *10-Day Detox*

- The launch and production of a weekly video newsletter, including work on its design, copyediting, coordination, film editing, graphics, technology and content.

- The implementation of strategies, designs and execution of a recipe testing program.

- The creation, management and publication of operational reporting procedures.

- The implementation of creative and functional strategies for the re-launch of a cookbook.

- The oversight of functionality, creative technology and copy for the launch of the book, *The Daniel Plan.*

- The production, coordination, writing, planning and management of the PBS Pledge Package.

- The management of Hyman's primary web design firm.

- Management of human resource issues among staff.

–5–

- The coordination and management of Video Testimonials.

Additionally, Plaintiffs oversaw vendor selection for branding & creative design work, ran operational and strategy meetings, held weekly 1-on-1 meetings with team members, and managed vendors, including negotiating pricing on behalf of Hyman Enterprises.

16.   For the entirety of their working relationship with Hyman and Hyman Enterprises, LLC.   Seibert and Van Dillen worked tirelessly, often around the clock to meet deadlines for Hyman's business commitments.   In addition to turning down other consulting work during this time, Seibert and Van Dillen each spent significant out of pocket money with the expectation, as discussed repeatedly with Hyman, that they would be made whole.   Seibert spent at least $100,000 on photography and video equipment that was used for the production of nearly a dozen video newsletters to support Hyman's social media following, customer testimonials to support the 10-Day Detox Book Launch, and hours of footage in support of Hyman's digital video product. Additionally, Seibert spent $25,000 on a van to transport equipment, and travel expenses to and from Hyman's home in Massachusetts.   Van Dillen traveled to New York, Washington, D.C., and Massachusetts on behalf of Hyman Enterprises.

17.  At every step along the way, Hyman communicated his appreciation for Plaintiffs' efforts and work product, constantly stating directly to Plaintiffs, "we have to get you guys paid," and to others, "We have to get these guys paid." Despite Hyman's assertions, he never made any effort to compensate Plaintiffs.

Plaintiffs started to become concerned about the veracity of Hyman's promises on account of Hyman's conduct.

18.     From August through October 2013, Defendant repeatedly asked Seibert to take illegal drugs – marijuana and ecstasy.   Every time Seibert refused, Hyman apologized and said he forgot Seibert didn't use drugs, only to ask Seibert to engage in illegal drug use again and again.   The last time Hyman asked Seibert to engage in this behavior was on October 11, 2013, at a company party called "Octoberfest" where everyone in attendance was encouraged to participate in illegal drug use.   On the two occasions that Seibert went to parties for Hyman Enterprises, he found all in attendance, including Hyman, engaging in illegal drug use.

19.   At the end of October 2013, Hyman expressed great concern about the company's financial state.   Seibert met with the Chief Financial Officer, Gerry Doherty, to review the company's finances in more detail.   The CFO informed Seibert that Hyman Enterprises had a negative cash flow because Hyman had withdrawn almost $2.9 million in cash from the company that same fiscal year for Hyman's own personal use.   The CFO explained to Seibert that Hyman was in the middle of his third divorce and as a result was responsible for significant alimony payments.

20.  Hyman also started excluding Plaintiffs from certain business decisions and discussions because of their religion, stating to Seibert that he was inferior for not sharing the same religious affiliation with Hyman, namely Jewish.

21.  In November, Seibert approached Hyman and said that he and Van Dillen could not continue to work for Hyman without being paid because Hyman was taking millions of dollars out of the company for his own personal use.  Hyman's response was, "We'll get you paid, I know, I know."

22.  In November, Defendant left a voicemail on Seibert's phone telling Seibert how much he "loved" working with Seibert and valued what Seibert did for him, that he had improved past year significantly.

23.  On December 3rd, while in a taxi en-route to a meeting with the Defendant's book publisher, Defendant said to Van Dillen "So, we really have to get you paid."  Five days later and without any explanation, Hyman fired Seibert and Van Dillen.

24.  After Plaintiffs were terminated, Hyman had a successful book launch based on Plaintiffs' efforts and went on to become a New York Times Bestselling author of *The 10-Day Detox*.  Defendant continued to benefit from marketing and operational support provided earlier from Seibert and Van Dillen of *The Daniel Plan*, a book Hyman co-authored with a national celebrity. Hyman also continued to use video materials, web designs and technology Plaintiffs had helped build and invested personal money in producing to promote and grow his audience, and continued to benefit from vendor relationships Plaintiffs had created, developed or improved.

25. Despite repeated promises by Defendant to compensate Plaintiffs for their services and acknowledgements by Defendant that Plaintiffs must be

paid, Defendant made no payments to Plaintiffs for their services, the majority of which were performed by Plaintiffs in the State of New Jersey.

## COUNT I
## BREACH OF CONTRACT

26.  Plaintiffs repeat the allegations of Paragraphs 1 through 25, as if fully set forth.

27.  The Plaintiffs and Defendants entered into a contract whereby Plaintiffs agreed to provide services to Defendant in exchange for remuneration.

28.  Defendants breached the contract by their failure to pay Plaintiffs for their services and by its actions violated the covenant of good faith and fair dealing implicit in the contract between the parties.

29.  As a result of Defendants' breach of the contract, Plaintiffs have sustained damages.

WHEREFORE, Plaintiffs, Joseph N. Seibert and Erik Van Dillen, demand judgment against Defendants,  Mark Hyman, M.D. and Hyman Enterprises, LLC, for damages, costs of suit and interest.

## COUNT II
## FRAUD IN THE INDUCEMENT

30.  Plaintiffs repeat the allegations of Paragraphs 1 through 29, as if fully set forth.

31.  Defendant, Mark Hyman, M.D., induced Plaintiffs to provide services to himself and his company Hyman Enterprises, LLC based upon his promises that he would compensate Plaintiffs for their services.

32.  Defendant never had any intention of compensating Plaintiffs for

their services when he made his initial promises that Plaintiffs would be compensated for their services. After Plaintiffs began performing services for Defendants, Mark Hyman, M.D made additional representations to Plaintiffs that they would be paid for their services in order to induce them to continue to provide services to Mark Hyman, M.D. and his company.  Defendant never had any intention of compensating Plaintiffs for their services when he made these additional promises. Upon information and belief, Defendant has made promises to other individuals to induce them to provide services for Hyman Enterprises and then failed to pay those individuals for work performed.

33. Defendant's representations that he would compensate Plaintiffs for their services were false. Defendant knew they were false at the time he made them and knew that Plaintiffs would rely on his representations.

34.    Plaintiffs'  reasonably  relied  upon  Defendant's  material representations to their economic detriment.

35.  As a result of Plaintiffs' reliance on the misrepresentations of Defendant, Plaintiffs have suffered damages and economic loss.

36. Defendants intentional actions were malicious and justify an award of punitive damages.

**WHEREFORE**, Plaintiffs, Joseph N. Seibert and Erik Van Dillen demand judgment against Defendant, Mark Hyman, M.D. and Hyman Enterprises, LLC for compensatory and punitive damages together with costs, interest, and such other relief the Court may deem appropriate.

## COUNT III
## QUANTUM MERUIT

37.  Plaintiff repeats the allegations of Paragraphs 1 through 36.

38.  Plaintiffs provided valuable labor, material and services to Defendants.

39.  Defendants benefited from the labor, material and services Plaintiffs provided to them.

40.  Defendants failed to pay Plaintiffs for the value of the labor, material and services provided to them.

41.  Plaintiff suffered economic loss as a result of the failure of the defendants to pay for Plaintiffs' labor, services and materials for which Defendants knew that plaintiffs expected to receive compensation.

**WHEREFORE**, Plaintiffs, Joseph N. Seibert and Erik Van Dillen demand judgment against Defendants, Mark Hyman, M.D. and Hyman Enterprises, LLC for compensatory damages together with costs, interest, and such other relief the Court may deem appropriate.

## COUNT IV

## LAW AGAINST DISCRIMINATION

42.  Plaintiff repeats the allegations of Paragraphs 1 through 41.

43.  Defendants decided to terminate their relationship with Plaintiffs, because Plaintiffs were not of the Jewish faith. Defendants decided to terminate their relationship with Plaintiff on account of the actual or perceived religious affiliation of the Plaintiffs.

44. Defendant's actions constituted a violation of the New Jersey Law

–11–

Against Discrimination, as a direct and proximate result of which the Plaintiffs have suffered economic injury, humiliation, anguish, embarrassment, emotional and mental distress and other damages.

45. The willful and deliberate discriminatory acts of Defendants, Mark Hyman, M.D. and Hyman Enterprises, LLC, were outrageous and beyond all bounds of decency, justifying the imposition of punitive damages.

46. The conduct of Defendants warrants an award of punitive damages as the willful participation of the Mark Hyman, individually and as owner and president of Hyman Enterprises, LLC, justifies the imposition of punitive damages for the Defendants' reckless indifference to the rights of Plaintiffs, Joseph N. Seibert and Erik Van Dillen.

WHEREFORE, Plaintiffs, Joseph N. Seibert and Erik Van Dillen, demands judgment against Defendants, Mark Hyman, M.D., and Hyman Enterprises, LLC for compensatory damages, including damages for emotional distress, personal injury, back pay, front pay, consequential damages, punitive damages, pre-judgment interest, enhancements for tax consequences, reasonable attorney's fees enhanced under the New Jersey Law Against Discrimination, costs of suit, and any other relief this Court deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## CERTIFICATION

I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that I am not aware of any other person who should be joined in this matter.

Dated: 8/22/14

Thaddeus P. Mikulski, Jr.

**Appendix XII-B1**



## CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| | |
|---|---|
| **FOR USE BY CLERK'S OFFICE ONLY** | |
| PAYMENT TYPE: □ CK □ CG □ CA | |
| CHG/CK NUMBER | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

*(stamp: MERCER COUNTY RECEIVED AND FILED AUG 29 2014)*

| ATTORNEY / PRO SE NAME<br>Thaddeus P. Mikulski, Jr. | TELEPHONE NUMBER<br>(609) 581-0470 | COUNTY OF VENUE<br>Mercer |
|---|---|---|
| FIRM NAME (if applicable) | | DOCKET NUMBER (when available)<br>L-1967-14 |
| OFFICE ADDRESS<br>365 White Horse Avenue<br>Hamilton, NJ 08610 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND   ☒ Yes   □ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Joseph N. Seibert and Erik Van Dillen | CAPTION<br>Joseph N. Seibert and Erik Van Dillen vs. Mark Hyman, M.D., t/a Hyman Enterprises |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>509 | HURRICANE SANDY<br>RELATED?<br>□ YES   ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?   □ YES   ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|

| RELATED CASES PENDING?<br>□ Yes   ☒ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>□ Yes   ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)   □ NONE<br>☒ UNKNOWN |
|---|---|

| **THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.** |
|---|

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☒ Yes   □ No | IF YES, IS THAT RELATIONSHIP:<br>☒ EMPLOYER/EMPLOYEE   □ FRIEND/NEIGHBOR   □ OTHER (explain)<br>□ FAMILIAL   □ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☒ Yes   □ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>□ Yes   ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>□ Yes   ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *Thaddeus P Mikulski*

MERCER COUNTY COURTHOUSE
CIVIL CASE MANAGEMENT OFFICE
175 SOUTH BROAD ST P O BOX 8068
TRENTON                    NJ 08650-0068

COURT TELEPHONE NO.: (609) 571-4490
COURT HOURS  8:30 AM - 4:30 PM

TRACK ASSIGNMENT NOTICE

DATE:      SEPTEMBER 08, 2014
RE:        SEIBERT ET AL V HYMAN ENTERPRISES LLC ET AL
DOCKET:    MER L -001967 14

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

DISCOVERY IS     300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON ANTHONY M. MASSI

AT:
(609) 571-4475.

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     012
AT:
(609) 571-4475.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

                    ATTENTION:
                              ATT: THADDEUS MIKULSKI JR.
                              THADDEUS MIKULSKI JR
                              LAW OFFICE OF THADDEUS P MIKULSKI JR
                              365 WHITE HORSE AVE
                              HAMILTON            NJ 08610-1423

JTUWKOR: